IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JULIANA JETT,                              §
                                           §
                    Plaintiff,             §
                                           §   Civil Action No. 3:12-CV-2136-D
VS.                                        §
                                           §
EXPERIAN INFORMATION                       §
SOLUTIONS, INC., et al.,                   §
                                           §
                    Defendants.            §

MEMORANDUM OPINION
AND ORDER

This lawsuit brought under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*

("FCRA"), arises from the reporting of a personal bankruptcy and its alleged impact on the

plaintiff and her ability to refinance her home mortgage.  Plaintiff and two defendants move

for summary judgment, one defendant moves for judgment on the pleadings, or, alternatively,

for summary judgment, one defendant moves to strike plaintiff's expert witness, and plaintiff

moves for partial summary judgment.  For the reasons that follow, the court grants in part and

denies in part two defendants' summary judgment motions, grants the other defendant's

alternative summary judgment motion, grants in part and denies in part as moot the motion

to strike the expert witness, denies plaintiff's motion for partial summary judgment, and

raises *sua sponte* that one defendant is entitled to summary judgment on a ground not raised.[1]

---

[1]In briefing these motions, the parties have made various filings under seal.  Having
considered the sealed filings, the evidence that is cited in this memorandum opinion and
order, and the public nature of this proceeding, the court concludes that this memorandum
opinion and order should not be filed under seal.

I

Plaintiff Juliana Jett ("Jett") sues defendants Experian Information Solutions, Inc. ("Experian") and Trans Union LLC ("Trans Union"), alleging that they violated §§ 1681e(b) and1681i of FCRA, and American Home Mortgage Servicing, Inc. ("AHMSI"),[2] alleging that it violated § 1681s-2(b) of FCRA.  Jett asserts that Experian and Trans Union violated § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files they published and maintained concerning her, and that they violated § 1681i by failing to correct inaccurate information in her credit files after receiving actual notice of such inaccuracies, by failing to conduct lawful reinvestigations, and by failing to maintain reasonable procedures with which to filter and verify disputed information in her credit files.  Jett alleges that AHMSI violated § 1681s-2(b) by failing to fully and properly investigate her dispute of the reporting of inaccurate information about her to credit reporting agencies, by failing to review all relevant information about the dispute, and by failing to accurately respond.

Jett owns a residence in Grand Prairie, Texas (the "Property").[3]  To finance her

---

[2]In her amended complaint, Jett refers to this defendant as "American Home Mortgage Servicing, Inc."  Am. Compl. ¶ 1.  AHMSI refers to itself as "Homeward Residential, Inc., f/k/a American Home Mortgage Servicing, Inc."  *E.g.,* AHMSI 10/18/13 Mot. J. on Pleadings or Summ. J. 1.  The court will refer to this defendant according to the name under which it is sued.

[3]Because both sides move for summary judgment, the court will recount the evidence that is undisputed, and, when necessary to set out evidence that is contested, will do so favorably to the party who is the summary judgment nonmovant in the context of that evidence.  *See, e.g., GoForIt Entm't, LLC v. DigiMedia.com L.P.,*750 F.Supp.2d 712, 718

purchase of the Property, she entered into a mortgage loan agreement ("Mortgage") with AHMSI in 1997. Jett eventually fell significantly behind in her payments, and AHMSI notified her that it would initiate foreclosure proceedings if she failed to pay the arrearage. Before AHMSI foreclosed on the Property, however, Jett filed for chapter 13 bankruptcy in March 2005. During the bankruptcy proceeding, Jett agreed to make up the past-due amount owed to AHMSI and to begin making timely monthly payments toward the remaining debt owed to AHMSI (the "AHMSI Account"). The bankruptcy court did not discharge Jett's indebtedness to AHMSI, and AHMSI did not foreclose on the Property. According to Jett, the AHMSI Account is in good standing, and for several years following her bankruptcy she has been making timely payments. In 2008 Jett's other unsecured debts were discharged under her chapter 13 plan.

Jett disputed the accuracy of the Mortgage as reported on the credit reports of Experian and Trans Union. In August 2010 Jett notified Trans Union—a credit reporting agency ("CRA")—by letter that it was reporting inaccurate information about the AHMSI Account.[4] In September 2010 Trans Union stopped reporting any information about the AHMSI Account. In August or September 2010 Jett notified Experian—also a CRA— by

---

n.4 (N.D. Tex. Oct. 25, 2010) (Fitzwater, C.J.) (citing *AMX Corp. v. Pilote Films*, 2007 WL 1695120, at *1 n.2 (N.D. Tex. June 5, 2007) (Fitzwater, J.)).

[4]In Experian's motion for summary judgment, it cites evidence that Jett disputed Experian's reporting of the AHMSI Account in 2008 and 2009. Because Jett's claims against Experian are based on events occurring in and after 2010, the court will consider evidence regarding Jett's disputes with the CRAs from late 2010 to 2012.

letter that it was reporting inaccurate information about the AHMSI Account.  Jett also made a telephone call to Experian in September 2010.  In October 2010 AHMSI verified the accuracy of the Mortgage as reported by Experian and Trans Union.  In December 2010 Jett requested that AHMSI correct the reporting of the Mortgage to the credit bureaus.  AHMSI responded that it would conduct an investigation regarding the reporting of the Mortgage, and in January 2011 it notified Jett that it had investigated her request and determined that the reporting of the Mortgage discharge in bankruptcy was accurate.  Until August 2011 Experian reported that the balance of the AHMSI Account was "$0" and that the account had been discharged or included in a chapter 13 bankruptcy.  In August 2011 Experian stopped reporting any information about the AHMSI Account.

Jett alleges, *inter alia*, that Experian's and Trans Union's violations of FCRA caused lenders to deny her loan applications.  She submitted two separate loan applications to Southwest Airlines Federal Credit Union ("Southwest") for a home refinance loan, which Southwest denied in February 2011 and April 2012.  Jett applied for a loan from Credit Plus/Cendera Fund ("Cendera"), which Cendera denied in April 2012.  Jett also submitted a loan application to Greensky Credit, which operates under the service mark Home Depot Loan Services ("Home Depot").  Home Depot initially denied her application in July 2012, although in August 2012 it approved a loan at a higher interest rate.[5]

Trans Union now moves to strike Jett's expert witness, Douglas A. Minor ("Minor");

---

[5]Jett alleges that Trans Union's and Experian's alleged FCRA violations caused Cendera to deny her loan application at the lower interest rate.

Experian and Trans Union move for summary judgment; AHMSI moves for judgment on the pleadings, or, alternatively, for summary judgment; and Jett moves for partial summary judgment.  All the motions are opposed.

## II

The parties' summary judgment burdens depend on whether they are addressing a claim for which they will have the burden of proof at trial.

Because Experian, Trans Union, and AHMSI will not have the burden of proof at trial on Jett's FCRA claims, they can meet their summary judgment obligation by pointing the court to the absence of evidence to support the claim in question.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once they do so, Jett must go beyond her pleadings and designate specific facts showing that there is a genuine issue for trial.  *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).  An issue is genuine if the evidence is such that a reasonable trier of fact could return a verdict in the defendants' favor.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Jett's failure to produce proof as to any essential element renders all other facts immaterial.  *See TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.).  Summary judgment is mandatory as to the claim in question if Jett fails to meet this burden.  *Little*, 37 F.3d at 1076.

Jett has filed a motion for partial summary judgment.  When a party moves for summary judgment on a claim on which she will have the burden of proof at trial, she "must establish 'beyond peradventure all of the essential elements of the claim[.]'"  *Bank One, Tex.,*

*N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.)

(quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)).  This means that she

must demonstrate that there are no genuine and material fact disputes and that she is entitled

to summary judgment as a matter of law.  *See Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d

409, 412 (5th Cir. 2003).  "The court has noted that the 'beyond peradventure' standard is

'heavy.'"  *Carolina Cas. Ins. Co. v. Sowell*, 603 F.Supp.2d 914, 923-24 (N.D. Tex. 2009)

(Fitzwater, C.J.) (quoting *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL

2403656, at *10 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.)).

## III

Experian and Trans Union move for summary judgment dismissing Jett's claims that

they violated § 1681e(b).

## A

Section 1681e(b) provides: "Whenever a consumer reporting agency prepares a

consumer report it shall follow reasonable procedures to assure maximum possible accuracy

of the information concerning the individual about whom the report relates."  To establish

liability under § 1681e(b), Jett must prove that Experian or Trans Union included inaccurate

information in her credit report and that Experian or Trans Union reported this information

because of its "failure to follow reasonable procedures to assure maximum possible

accuracy."  *Zala v. Trans Union, LLC*, 2001 WL 210693, at *3 (N.D. Tex. Jan. 17, 2001)

(Fitzwater, J.).  Experian and Trans Union point to the absence of evidence that they violated

§ 1681e(b).  The summary judgment burden therefore shifts to Jett to produce evidence that

would enable a reasonable trier of fact to find that Experian or Trans Union failed to follow reasonable procedures to assure maximum possible accuracy of the information in Jett's credit report.

B

Jett cites evidence that Experian and Trans Union failed to follow reasonable reinvestigation procedures, and she posits that, when a CRA violates § 1681i, it also violates § 1681e(b).[6]  Evidence that Experian or Trans Union failed to follow reasonable reinvestigation procedures is irrelevant to the question whether Experian or Trans Union violated § 1681e(b) because § 1681e(b) only makes CRAs liable for their failure to follow reasonable procedures at the time they add information.  *See Thompson v. San Antonio Retail Merchs. Ass'n*, 682 F.2d 509, 513 (5th Cir. 1982) (stating that duty created by § 1681e(b) "arises with every addition of information"); *Waggoner v. Trans Union, LLC*, 2003 WL 22220668, at *6 (N.D. Tex. July 17, 2003) (Fish, C.J.) (stating that § 1681e(b) claimant "must demonstrate that an inaccuracy in her credit report resulted from negligent or willful failure to use reasonable procedures *when the report originally was prepared*" (emphasis added)); *Zala*, 2001 WL 210693, at *4 (citing *Swoager v. Credit Bureau of Greater St. Petersburg, Fla.*, 608 F. Supp. 972, 975 (M.D. Fla. 1985), for proposition that "§ 1681e(b)

---

[6]Jett cites *Lazarre v. JPMorgan Chase Bank, N.A.*, 780 F.Supp.2d 1330, 1336 (S.D. Fla. 2011), in support.  The court is not bound by *Lazarre*; it is bound, however, by the reasoning of *Thompson v. San Antonio Retail Merchants Ass'n*, 682 F.2d 509, 513 (5th Cir. 1982).  The court is also persuaded by earlier decisions of this court that hold that a CRA is only liable for violating § 1681e(b) at the time the CRA adds new information to a consumer credit report.

refers to the initial compiled consumer credit report, not the reinvestigation of any asserted errors"); *Matise v. Trans Union Corp.*, 1998 WL 872511, at *4 (N.D. Tex. Nov. 30, 1998) (Fitzwater, J.) (holding that evidence of CRA's actions after notice of inaccuracy is irrelevant to liability under § 1681e(b)).

Jett has failed to adduce evidence that would enable a reasonable trier of fact to find that Experian or Trans Union failed to follow reasonable procedures to assure maximum possible accuracy at the time they added the information in question. Accordingly, the court grants Trans Union's and Experian's motions for summary judgment as to Jett's § 1681e(b) claims.[7]

## IV

Jett alleges negligence-based claims against Trans Union under § 1681i and § 1681o, asserting that Trans Union's violations of § 1681i caused her several, different kinds of

---

[7]Because Jett has failed to adduce evidence that would enable a reasonable trier of fact to find that Experian or Trans Union violated § 1681e(b), the court need not consider whether Jett has made the additional showings required under FCRA's two civil liability provisions, § 1681n and § 1681o. Section 1681e(b) is one of several sections in FCRA designating the duties that CRAs and other participants in the credit rating industry have with regard to consumers. When a plaintiff seeks to recover under FCRA, she must prove that the defendant violated a duty created by the Act. And she must also satisfy the elements of at least one of FCRA's two civil liability provisions, § 1681n and § 1681o. Under § 1681n, the plaintiff must prove that the defendant willfully violated a duty created by FCRA. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007) (holding that § 1681n includes reckless violations); *see also, e.g., Zala*, 2001 WL 210693, at *8 (requiring plaintiff to show that defendant willfully committed an act that violated FCRA). Under § 1681o, the plaintiff must prove that the defendant negligently violated a duty created by FCRA and that she suffered actual damages as a result of the violation. *See*, *e.g., id.* at *4 (requiring plaintiff to show violation, injury, and causation).

injuries.[8]   In this section, the court considers Jett's and Trans Union's cross-motions for summary judgment regarding Jett's negligence-based claims for alleged damages to her credit score and various credit denials allegedly caused by the decrease in her credit score.

A

To establish a right to relief under these provisions, Jett must prove that (1) she disputed the completeness or accuracy of an item of information contained in her consumer file and notified Trans Union directly of that dispute; (2) Trans Union did not reinvestigate free of charge and either record the current status of the disputed information or delete the item from the file in the manner prescribed by § 1681i(a)(5) within the statutory period; (3) Trans Union's noncompliance was negligent; (4) Jett suffered injury; and (5) Jett's injury was caused by Trans Union's failure to reinvestigate and record the current status of the disputed information or to delete the item from the file. *See Zala*, 2001 WL 210693, at *4 (listing elements of § 1681i claim brought under § 1681o).[9]

---

[8]Because the parties' arguments regarding these different kinds of injuries are distinct, the court addresses them in separate sections of this memorandum opinion and order.  In §§ IV(A)-(D) and V(A)-(D), the court considers Jett's allegations that Trans Union and Experian caused damage to her credit score and caused lenders to reject her loan applications. In § VI the court considers Jett's allegations that Trans Union and Experian caused her emotional damages.  And in § VII the court considers Jett's allegations that Trans Union and Experian caused her out-of-pocket damages.  Although the court addresses these allegations of injury in separate sections, each type qualifies as "actual damages" under § 1681o(a)(1), and Jett can pursue a remedy for each under §§ 1681i and 1681o.

[9]For the reasons explained *supra* at note 7, Jett must show that the defendant in question violated § 1681i, and she must also satisfy the requirements of § 1681o to prove a negligence-based claim under FCRA.

B

Trans Union points to the absence of evidence that its alleged violations of § 1681i caused Southwest, Cendera, or Home Depot to deny Jett's loan applications. Because Trans Union has pointed to the absence of this evidence, the burden shifts to Jett to produce evidence that would enable a reasonable trier of fact to find that Trans Union's violation of § 1681i caused these lenders to deny the loan applications.

C

Because Jett relies on the opinion testimony of her expert (Minor) to raise a fact issue concerning whether Trans Union caused her damages, and Trans Union moves to strike Minor's testimony, the court must address Trans Union's motion to strike as a threshold matter.

1

"The court decides [motions to strike expert testimony] in its role as gatekeeper under Fed. R. Evid. 702." *Orthoflex, Inc. v. ThermoTek, Inc.*, ___ F.Supp.2d ___, 2013 WL 6476371, at *1 (N.D. Tex. Nov. 20, 2013) (Fitzwater, C.J.) (quoting *SEC v. Cuban*, 2013 WL 3809654, at *1 (N.D. Tex. July 23, 2013) (Fitzwater, C.J.)). "To be admissible under Fed. R. Evid. 702, expert testimony must be both relevant and reliable." *Rolls-Royce Corp. v. Heros, Inc.*, 2010 WL 184313, at *2 (N.D. Tex. Jan. 14, 2010) (Fitzwater, C.J.) (citing *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002)). "Testimony is irrelevant . . . when an expert offers a conclusion based on assumptions unsupported by the facts of the case." *Id.* at *6. "The burden is on the proponent of the expert testimony to establish its

admissibility by a preponderance of the evidence." *Orthoflex*, 2013 WL 6476371, at *2

(citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 n.10 (1993)); *cf. Johnson*

*v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (stating that proponent of expert testimony

must prove by preponderance that testimony is reliable).

2

Trans Union maintains that Minor's expert testimony is not relevant to the question

whether Trans Union caused Southwest to deny Jett's loan application in 2011. Minor

opines that if the CRAs had not reported that the AHMSI Account was included in a chapter

13 bankruptcy, Southwest would have approved Jett's loan application in 2011, enabling her

to obtain a lower interest rate on her loan. *See* Trans Union 10/18/13 Mot. to Strike App. 137

(opining that "Jett has and continues to suffer with paying a higher rate of interest on her

existing Mortgage" because the CRAs reported the AHMSI Account "showing the narrative,

account included in CH 13 Bankruptcy" in Jett's December 2010 and February 2011 credit

reports). But Minor also concedes that Trans Union was not reporting any information about

the AHMSI Account at that time, and that his expert opinion does not actually refer to Trans

Union. Jett responds that, without Minor's testimony, the trier of fact will not be able to

understand how Trans Union's inaccurate report caused lenders to reject Jett's loan

applications. But her argument does not rebut the undisputed evidence that Minor's opinion

is based on the assumption that the CRAs were reporting the AHMSI Account as included

in Jett's chapter 13 bankruptcy, and that this assumption is unsupported with respect to Trans

Union.

The court therefore concludes that Jett has failed to carry her burden of establishing by a preponderance of the evidence that Minor's opinion is relevant on the question whether Trans Union caused Southwest to deny Jett's loan application in 2011, because the opinion is based on an assumption that is unsupported by the facts.  The court grants Trans Union's motion to strike in this respect.[10]

3

Because Minor's expert testimony is the only evidence to which Jett points in support of her claim that Trans Union's alleged violation of § 1681i caused Southwest to deny her loan application in 2011, Jett has failed to adduce evidence that would permit a reasonable trier of fact to find that Trans Union is liable under § 1681i.  Accordingly, the court grants Trans Union's motion for summary judgment to the extent of dismissing Jett's § 1681i claim based on Southwest's denial of Jett's loan application in 2011.

D

Trans Union also moves for summary judgment on the ground that Jett cannot prove that Trans Union caused Southwest, Cendera, or Home Depot to deny Jett's loan applications in 2012.

Jett points to a Trans Union webpage to show that having an established credit history and a balanced mix of credit accounts and loans are important factors in determining a

---

[10]Because the court is granting the relevant portion of Trans Union's motion for summary judgment on the ground that Minor's testimony and report are not relevant to the issue of causation, the court need not decide whether Minor is qualified to testify as an expert regarding other issues in this case.

consumer's credit score.[11]  Jett also cites Minor's testimony that her credit score could have improved by as many as 85 points had Trans Union reported the AHMSI Account accurately in 2010.[12]  Even viewing this evidence in the light most favorable to Jett as the summary judgment nonmovant, it only permits the reasonable inference that Jett's credit score would have been higher had Trans Union correctly reported the AHMSI Account.  But even if Jett's credit score would have been higher had Trans Union reported the status of the AHMSI Account in 2012, Jett cites no summary judgment evidence that would enable a reasonable trier of fact to find that a higher credit score would have influenced Southwest or Cendera to approve her loan application, or that Home Depot would have approved her loan application at a lower interest rate.

The court concludes that Jett has failed to adduce any evidence that would enable a reasonable trier of fact to find that Trans Union caused Southwest, Cendera, or Home Depot to deny Jett's credit applications in 2012.  Accordingly, the court grants Trans Union's motion for summary judgment to the extent of dismissing Jett's § 1681i claim based on the denial by Southwest, Cendera, or Home Depot of Jett's credit applications in 2012.

---

[11]Jett asserts that Trans Union's omission of her history of making regular payments on the account from 2005 forward likely had the largest adverse effect on her credit score. Because this assertion is conclusory and unsubstantiated, it is insufficient to defeat Trans Union's motion for summary judgment.  *See, e.g., RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

[12]Because the court is striking Minor's report only on the question whether Trans Union caused Southwest to deny Jett's loan application in 2011, the court will consider this evidence.

E

The court next considers Jett's and Trans Union's cross-motions for summary judgment regarding Jett's willfulness-based claim under § 1681i and § 1681n.[13]

1

To establish a right to relief under these provisions, Jett must prove that Trans Union recklessly violated its duties under § 1681i.  *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007) (holding that § 1681n includes reckless violations); *see also, e.g., Zala*, 2001 WL 210693, at *8.[14]  Jett must therefore introduce evidence that would enable a reasonable trier of fact to find that, in addition to violating § 1681i, Trans Union's policies or procedures violated a reasonable reading of § 1681i's terms, and that Trans Union ran a risk of violating § 1681i that was substantially greater than the risk associated with a reading of §1681i that was merely careless.  This is an objective, not subjective, standard.  *Id.* at 68-70 (holding that willfulness includes recklessness, and applying standard).[15]

_____

[13]Jett's willfulness-based claim under § 1681i and § 1681n is not dependent on whether she recovers under § 1681i and § 1681o based on negligent conduct.  *See Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1179 (10th Cir. 2013) (stating that consumer need not prove actual damages to state willful violation claim).

[14]For the reasons explained *supra* at note 7, Jett must show that the defendant in question violated § 1681i, and she must also satisfy the requirements of § 1681n to prove a willfulness-based claim under FCRA.

[15]*Morris v. Equifax Information Services LLC,* 289 Fed. Appx. 708 (5th Cir. 2008) (per curiam), appears to be the only opinion to date in which the Fifth Circuit has interpreted the *Safeco* willfulness standard.  In *Morris* the Fifth Circuit considered whether a district court gave adequate jury instructions on the willfulness standard of § 1681n as applied to an allegation that a CRA failed to conduct a reasonable reinvestigation of a consumer's account

2

Jett points to evidence that she sent a letter to Trans Union in August or early September 2010 disputing the information that Trans Union was reporting about the AHMSI Account.  She cites evidence that the Trans Union employee who reviewed her letter did not follow company procedure because he failed to verify required information, such as Jett's name and address.   Jett points to evidence that Trans Union's computer systems are configured to automatically delete accounts that do not include this required information, regardless whether the absence of such information is caused by employee error.  She cites evidence that Trans Union treated its reinvestigation of her account as "normal," P. 10/18/2013 Mot. Partial Summ. J. 72, even though Trans Union admitted that deleting Jett's account was a "mistake," *id.* at 64.   Finally, she points to evidence that Trans Union generally refuses to reconsider a reinvestigation that results in deleting account information, regardless whether the decision to delete the account information is caused by Trans Union's error.

Trans Union argues that it has no duty to report any specific information on consumer

---

pursuant to § 1681i.  Applying *Safeco*, the panel held that "[t]he district court's Special Instruction sufficiently explained the *Safeco* standard[s]."  *Id.* at 710.  The willfulness standard recited above is substantially identical to the special instruction that the Fifth Circuit affirmed as adequate in *Morris*.  *See Morris v. Equifax Info. Servs. LLC*, No. 4:04-CV-00423 (S.D. Tex. July 27, 2007) (ECF No. 143) (citing verdict at 23).  It is also consistent with the Supreme Court's application of the willfulness standard to a statutorily-defined duty created by FCRA.  *See Safeco*, 551 U.S. at 69-70 (reasoning that insurer did not willfully violate FCRA because its interpretation of its statutory duty had a foundation in the statutory text, was supported by a sufficiently convincing justification, and was not contradicted by administrative interpretation).

credit reports.  For this reason, it maintains that it cannot be held liable for willfully violating § 1681i for deleting the AHMSI Account information from Jett's credit report in response to her dispute letter.

The court need not decide whether FCRA creates any such duty in the abstract because the law makes clear that, once a CRA reports a specific item of information and a customer disputes it, the CRA is required to respond as § 1681i requires.  Once a CRA receives a dispute notice from a consumer and begins a reinvestigation, the CRA can dispose of the reinvestigation in two ways.  It can "terminate [the] reinvestigation" once it "reasonably determines that the dispute by the consumer is frivolous or irrelevant."  15 U.S.C. § 1681i(a)(3)(A).  Or it can "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate."  15 U.S.C. § 1681(a)(1)(A).  Although FCRA does not define what is a reasonable investigation, it at least requires that the CRA consider the information provided by the information furnisher, *see* § 1681i(a)(2), and the information provided by the consumer during the reinvestigation period, *see* § 1681(a)(4).  Once the CRA has conducted a reasonable reinvestigation, it has two choices.  If it is able to determine the disputed item's correct status, it can "record [its] current status." 15 U.S.C. § 1681i(a)(1)(A).  If the CRA finds that the information is "inaccurate or incomplete or cannot be verified," § 1681i(a)(5)(A), it can "delete . . . or modify that item of information, as appropriate," *id.* § (a)(5)(A)(i).

Jett has pointed to evidence that Trans Union deleted the AHMSI Account, not because it found that the information was inaccurate, incomplete, or could not be verified,

but because its employee failed to verify readily available information, and because its computer systems are configured to automatically delete accounts when this information is not verified.  She has also pointed to evidence that Trans Union's failure to conduct a reasonable reinvestigation under the terms of § 1681i was made worse by its policy of refusing to reconsider "normal" reinvestigations, even when it appears that the reinvestigation violates § 1681i's requirements.  The court therefore holds that a reasonable trier of fact could find that Trans Union willfully violated § 1681i.  It also holds that Jett has pointed to sufficient evidence to enable a reasonable trier of fact to find that Trans Union ran a risk of violating § 1681i that was substantially greater than the risk associated with a reading of §1681i that was merely careless.

Accordingly, the court denies Trans Union's motion for summary judgment addressed to Jett's claim that Trans Union willfully violated § 1681i.

3

In order for Jett to obtain partial summary judgment on her willfulness claim, she must meet the heavy beyond peradventure standard.  Although Trans Union has not met its burden of establishing entitlement to summary judgment on this claim, Jett has not satisfied the heavy standard that governs her entitlement to summary judgment.  Her motion for partial summary judgment is therefore denied in this respect.

F

In sum, the court grants Trans Union's motion for summary judgment and denies Jett's motion for partial summary judgment as to Jett's negligence-based § 1681i claims

seeking relief for harm to her credit score and for the denial of her credit applications.  The

court denies Trans Union's motion for summary judgment and denies Jett's motion for partial

summary judgment as to Jett's willfullness-based § 1681i claim.  Jett's willfullness-based

§ 1681i claim against Trans Union remains for trial.

V

Jett alleges negligence-based claims against Experian under § 1681i and § 1681o.  For

the reasons explained above, the court considers Jett's and Experian's cross-motions for

summary judgment regarding Jett's negligence-based claims for alleged damages to her

credit score and various credit denials allegedly caused by the decrease in her credit score.

A

Jett argues that Experian was required to conduct a reinvestigation in response to a

letter Jett sent to Experian in August or September of 2010.  Jett's argument pertains to the

first element of a negligence-based § 1681i claim: whether Jett disputed the completeness or

accuracy of an item of information contained in her consumer file at Experian.[16]

In late August or early September 2010, Jett sent Experian a letter disputing its

reporting of the AHMSI Account and requesting that Experian remove the designation that

the account had been discharged through bankruptcy.  Experian determined that the letter

---

[16]The parties do not now dispute that Jett sent the letter.  But as the court explains
*infra*, Jett must point to some evidence that it was unreasonable for Experian to verify the
authenticity of the consumer's dispute notification before conducting an reinvestigation, or
that Experian unreasonably applied its verification procedures to Jett's August or September
2010 letter.  Otherwise, Jett has failed to adduce evidence that Experian should have known
that she had disputed the information contained in her credit report.

was suspicious and that Jett had not sent it.  Experian advised Jett that it would not take any action based on her letter or any similar letter.  Jett argues that Experian violated § 1681i when it failed to initiate a reinvestigation at that time.

In order to show that her August or September 2010 letter triggered Experian's duty to conduct a reinvestigation, Jett must adduce evidence (or cite evidence already in the summary judgment record) that would enable a reasonable trier of fact to find that Experian violated § 1681i by establishing procedures to verify the authenticity of customers dispute notifications, or in the manner in which it applied the procedures to Jett's August or September 2010 letter.  Jett points to the testimony of an Experian representative, who stated that he did not know why Experian thought that the dispute letter was suspicious.  But she does not cite any evidence that Experian acted unreasonably when it evaluated her letter. The court holds that Jett has failed to adduce any evidence that Experian violated § 1681i when it determined that her letter was fraudulent and chose not to initiate a reinvestigation.

B

Jett and Experian both move for summary judgment on the question whether the reinvestigation Experian conducted in 2010 was negligent.

In addition to her August or September 2010 letter, Jett made a telephone call to Experian in September 2010.  In response to the call, Experian conducted a reinvestigation of the AHMSI Account.  Experian sent a verification request to AHMSI through the Automated Consumer Dispute Verification ("ACDV") system.  ACDVs contain multiple fields that allow CRAs and data furnishers to communicate concerning the details of a

consumer account, such as the account status, outstanding balance, number of payments past due, and other relevant information.  The account status is described in part through the Metro 2® Consumer Information Indicator ("CII") coding system.  Experian communicated to AHMSI that it was reporting the AHMSI Account with the CII code "H," which means that the account had been discharged in bankruptcy.  It also stated that it was reporting the AHMSI Account balance as "0."  Jett points to evidence that AHMSI responded by listing the account status as current, with an outstanding balance, while leaving the CII code blank. Experian maintains that, under the Credit Reporting Resource Guide ("CRRG"), it can delete a CII code only when the furnisher provides another CII code or a removal value.  According to this contention, AHMSI's failure to provide a new CII code meant that Experian understood the response as communicating that the account was both discharged in bankruptcy and current, with an outstanding balance.

Jett points to evidence that an Experian employee found AHMSI's response to be inconsistent.  She also cites evidence that Experian did not update her account with any of the information contained in AHMSI's ACDV response.  The court holds that Jett has adduced sufficient evidence to enable a reasonable trier of fact to find that Experian failed to conduct a reasonable reinvestigation of the AHMSI Account in response to her September 2010 telephone call.

Experian argues that its procedures were reasonable as a matter of law because it sent AHMSI an ACDV, AHMSI certified that the information in its response was correct, and AHMSI was in the best position to report on the current status of the account.  In contrast,

Jett contends that Experian's procedures were unreasonable as a matter of law because Experian should have known, or did know, that the information that AHMSI reported was inconsistent, yet it failed to take any additional steps to confirm the status of the account and failed to report the new information about the AHMSI Account's current status and its outstanding balance.

The court holds that neither party has demonstrated that its position is correct as a matter of law, and that each party's position must be resolved at trial. On the one hand, the court cannot say as a matter of law that it was reasonable for Experian to continue reporting the AHMSI Account information without incorporating any of the information that AHMSI provided. On the other hand, "FCRA does not impose strict liability for inaccurate entries. Rather, the [p]laintiff must show that the inaccuracy resulted from a negligent or willful failure to use reasonable procedures when the report was prepared." *Williams v. Credit Prot. Ass'n Trans Union, LLC*, 2009 WL 3719407, at *4 (N.D. Tex. Nov. 3, 2009) (Lindsay, J.) (quoting *Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 896 (5th Cir. 1998) (brackets added; internal quotation marks omitted). And to obtain summary judgment on this claim, Jett must satisfy the heavy beyond peradventure standard, which she has not. Accordingly, the court holds that neither Jett nor Experian is entitled to summary judgment concerning this aspect of Jett's § 1681i claim.

## C

Experian moves for summary judgment on the ground that Jett has failed to produce any evidence that she suffered economic damages as a result of Southwest's denial of her

loan application in 2011.  Experian's argument pertains to the fourth element of a negligence-based § 1681i claim: that Jett suffered actual injuries.

Experian objects in a footnote to Minor's testimony on the grounds that he is not qualified as an expert and that his methodology is unreliable and not based in commonly accepted practice.  With the exception of that single footnote, however, Experian's argument focuses on the relevance of Minor's testimony.  Experian argues that Minor's testimony is not evidence of Jett's damages because it relies on contradictory assumptions, and because Jett has not produced any proof that the factual predicates necessary to make Jett's calculations relevant existed in her case.  The court construes this as a relevance objection to Minor's expert opinion.

The court need not reach Experian's objection, however, because it holds that Jett has adduced sufficient, uncontested evidence that Experian's alleged violation of § 1681i caused her to suffer credit damages.  Jett points to Minor's expert opinion that, had her 2011 credit application been approved, her current mortgage payments would be calculated using an interest rate that is 2.5 to 2.75% lower.  Experian's assertion that Jett sought a cash-out refinance in 2011 for purposes, *inter alia*, of renovating her property and purchasing home furnishings, taken as true, actually strengthens Jett's evidence.  "The real damage from an erroneously reduced credit rating . . . occurs if the consumer's cost of actual borrowing increases or if he is refused credit altogether."  *Smith v. Santander Consumer USA, Inc.*, 703 F.3d 316, 317 (5th Cir. 2012) (per curiam).  Jett's and Experian's evidence suggests that Jett was refused credit altogether insofar as she sought to borrow against her equity in the

Property.  If Jett planned to borrow against some but not all of the equity, this evidence would also suggest that her cost of actual borrowing was effectively increased in regard to the residual equity.  The court need not reach the question whether Minor's specific damages calculations are admissible, because Experian does not sufficiently challenge his conclusion that Experian's actions caused Jett to pay a higher interest rate.  This evidence is sufficient to enable a reasonable trier of fact to find that Experian caused Jett to suffer actual damages.

D

Experian moves for summary judgment based on an absence of evidence that, before Southwest denied Jett's credit application in 2011, Experian sent Southwest a credit report, as defined in § 1681a(d), that contained inaccurate information.  Experian's argument pertains to the fifth element of a negligence-based § 1681i claim: that Experian's failure to conduct a reasonable investigation caused Jett's alleged injuries.

1

Jett points to a copy of a document that Experian prepared for her in August 2010.  At the top of the document, the "Report number" and "Report date" are shown.  P. 10/22/13 Mot. Partial Summ. J. App. 177 (bold font omitted).[17]  The document describes the status of the AHMSI Account as "Discharged through Bankruptcy Chapter 13," reports the AHMSI Account balance as "$0 as of Aug 2010," and under "Monthly payment" states "NA."  *Id.* (italics omitted).  Jett has submitted evidence that the AHMSI Account was not discharged

---

[17]Experian has not submitted any evidence that the credit reports it sends to consumers are different from the ones it sends to third parties.

- 23 -

in bankruptcy, that her account was in good standing, and that she was making regular monthly payments at the time Experian prepared the document. Jett also cites evidence that Experian sent her credit report to Southwest in December 2010 and February 2011, in connection with her loan application.

The court holds that Jett has adduced sufficient evidence to create a genuine fact issue that her credit report contained inaccurate information through February 2011, and that Experian sent her credit report to Southwest in connection with her 2011 loan application. The court therefore denies Experian's motion for summary judgment to the extent based on the assertion that Jett cannot show that, before Southwest denied her loan application in 2011, Experian sent Southwest a credit report that contained inaccurate information.

2

Experian also argues that Jett has failed to produce any evidence that Southwest relied on an Experian credit report when it denied her loan application in 2011, and that, even if it did, Jett has not adduced evidence that the allegedly inaccurate reporting of the AHMSI Account caused Southwest to deny her loan application. This argument pertains to the causation element of her claim.

In response to Experian's first contention, Jett points to an Experian credit report showing that Experian shared Jett's credit history with "FIRST AMERICAN FINANCIAL/CREDCO" ("FAFC") on December 1, 2010 and February 3, 2011, and stating the reason for FAFC's request as "Real Estate on behalf of Southwest Airlines [Credit]." P. 11/15/2013 Resp. Experian Mot. Summ. J. App. 44 (upper case font omitted). The court

holds that Jett has adduced sufficient evidence for a reasonable trier of fact to find that Southwest relied on an Experian credit report when it denied Jett's loan application in 2011.

In response to the second contention, Jett does not dispute Experian's factual assertions. Instead, she argues that, "[f]or summary judgment purposes, a 'plaintiff need only produce evidence from which a reasonable trier of fact could infer that the inaccurate items on the plaintiff's credit report were a substantial factor in the potential creditors' decisions to deny his applications for credit.'" P. 11/15/13 Resp. Experian Mot. for Summ. J. 13 (quoting *Tilley v. Global Payments, Inc.*, 603 F.Supp.2d 1314, 1325 (D. Kan. 2009)). *See also Ross v. FDIC*, 625 F.3d 808, 817 (4th Cir. 2010) (holding that, if there are multiple possible causes for injury, plaintiff must point to evidence that defendant's conduct was substantial cause); *Philbin v. Trans Union Corp.*, 101 F.3d 957, 969 (3d Cir. 1996) (applying substantial cause standard and explaining that FCRA plaintiff is not required to rule out other, possible substantial causes because decisions to deny credit often have more than one cause), *abrogated on other grounds*, 716 F.3d 688 (3d Cir. 2010). Experian relies on Southwest's letter explaining that it was suspending the processing of Jett's loan request to give her the opportunity to "[c]lear up the [AHMSI] account out of BK status." Experian 10/18/13 Mot. Summ. J. App. 95. It also cites Southwest's explanation for its decision to deny Jett's 2011 loan application, in which AHMSI checked "Bankruptcy" as one of the "Principal reason(s) for credit denial." *Id.* at 97. The court need not decide at the summary judgment stage whether AHMSI would have chosen a different denial explanation had it been referring to the information contained in the Experian report, or whether AHMSI's

explanation actually refers to public records of Jett's bankruptcy.  Jett is not required to demonstrate at the summary judgment stage that AHMSI's denial explanations refer to the information contained in Experian's report.  *See Philbin*, 101 F.3d at 969 ("[W]here a decision-making process implicates a wide range of considerations, all of which factor into the ultimate decision, it is inappropriate to saddle a plaintiff with the burden of proving that one of those factors was *the* cause of the decision.").  Jett is only obligated to adduce evidence that would enable a reasonable trier of fact to find that Experian's report was a substantial cause of Southwest's decision to deny her 2011 credit application.  The evidence in the summary judgment record is sufficient to create a genuine fact issue in this respect.[18]

3

Experian argues that Jett has failed to produce any evidence that its reports caused any lenders to deny Jett's loan applications in 2012.  This argument also pertains to the causation element of Jett's claims.

Jett cites an Experian webpage that explains that payment history, length of credit history, account age, and diversity of account types are important factors in Experian's credit scoring system.[19]  She implies that the AHMSI Account would have been positively

_____

[18]This decision is distinguishable from the court's conclusion in § IV(C) that a reasonable trier of fact could *not* find that Trans Union caused Southwest to deny Jett's loan application in 2011.  As the court explains, Jett's expert (Minor) conceded that Trans Union was not reporting any information about the AHMSI account at that time.

[19]Experian removed the AHMSI account information from Jett's credit report in August 2011.

evaluated in each of these categories, and she argues that Experian's deletion of it likely had the largest adverse effect on her credit score.  She also points to Minor's opinion that her credit score could have increased by 85 points had the AHMSI Account been reported accurately in December 2010.

The court holds that Jett has failed to adduce sufficient evidence for a reasonable trier of fact to find that Experian caused lenders to deny her loan applications in 2012.  Jett has not designated any evidence showing that the inclusion of the AHMSI Account would have caused her Experian credit score to increase.  Her conclusory allegation that its deletion likely had the largest adverse effect on her credit score "will not suffice to require a trial." *Travelers Ins. Co. v. Liljeberg Enters., Inc.*, 7 F.3d 1203, 1207 (5th Cir. 1993) (quoting *Shaffer v. Williams*, 794 F.2d 1030, 1033 (5th Cir. 1986)).  Moreover, even assuming that Jett's credit score would have been higher had Experian continued to report the AHMSI Account, Jett presents no evidence that her credit score would have increased enough that the lenders would have approved her loan applications in 2012.

Accordingly, the court grants Experian's motion for summary judgment as to Jett's § 1681i claim to the extent based on the denial of loans in 2012.

E

The court next considers Jett's and Experian's cross-motions for summary judgment regarding Jett's willfulness-based claim under § 1681i and § 1681n.

1

Experian contends that Jett has failed to adduce any evidence that Experian willfully

violated § 1681i.  Jett relies in response on evidence that Experian did not initiate a reinvestigation after receiving her dispute letters: according to Jett, Experian chose not to initiate a reinvestigation in August 2010 because it determined that the dispute letter it received was suspicious; chose not to initiate a reinvestigation in March 2011 because it determined that its previous reinvestigation had addressed the issues raised in her March 2011 dispute; and chose not to initiate a reinvestigation in both December 2011 and May 2012 because it determined that the AHMSI Account had "aged off" her credit file.

2

Jett has failed to demonstrate that Experian had a duty to initiate a reinvestigation when it determined that her August or September 2010 dispute letter was fraudulent, and she has not adduced any evidence that Experian's determination was based on an unreasonable practice or procedure.  *See* 15 U.S.C. § 1681i(a)(3).  Jett also fails to cite any evidence that Experian's decision to delete the AHMSI Account in response to her September 2010 telephone call constituted a willful violation of § 1681i.  Experian argues that it deleted the account because Jett's bankruptcy had aged off her credit file.  Jett fails to point to any caselaw that supports the position that a CRA has a duty to report credit information that it has deleted for reasonable purposes.  Jett relies on evidence that Experian does not regularly review information submitted by consumers during prior disputes when considering later disputes.  This evidence merely demonstrates that Experian's normal practices and procedures do not require employees to review all past disputes when a consumer submits a new dispute letter.  It does not establish that Experian's practices and procedures forbid

- 28 -

employees from doing so when a particular dispute merits such an in-depth review.  Jett has not produced evidence that would enable a reasonable trier of fact to find that a CRA is required to review a consumer's entire dispute history each time the consumer submits a new dispute.  Jett also points to evidence that Experian failed to conduct a further investigation into the AHMSI Account even though the AHMSI response was inconsistent and Jett repeatedly disputed the account.  But she has not produced proof that would enable a reasonable trier of fact to find that these failures were caused by Experian's practices and procedures as opposed to the individual failure of an Experian employee who was not adhering to company policies and procedures.

The court holds that Jett has failed to adduce sufficient evidence for a reasonable trier of fact to find that Experian's policies and procedures violated a reasonable reading of § 1681i's terms, and that Experian ran a risk of violating § 1681i that was substantially greater than the risk associated with a reading of §1681i that was merely careless.  Accordingly, the court grants Experian's motion for summary judgment and denies Jett's motion for partial summary judgment with respect to Jett's willful violation claim against Experian under § 1681n.

F

In sum, the court grants Experian's motion for summary judgment in part and denies it in part, and denies Jett's motion for partial summary judgment as to Jett's negligence-based § 1681i claims seeking relief for harm to her credit score and for the denial of her credit applications.  The court holds that Jett has adduced sufficient evidence to enable a reasonable

trier of fact to find that Experian's negligent violation of § 1681i caused Southwest to reject Jett's credit application in 2011.  The court holds that Jett has failed to adduce such evidence regarding her credit applications in 2012.  The court grants Experian's motion for summary judgment and denies Jett's motion for partial summary judgment as to Jett's willfullness-based § 1681i claim brought under § 1681n.  Jett's negligence-based claim based on Southwest's denial of her credit application in 2011 remains for trial.

## VI

Experian and Trans Union both move for summary judgment on Jett's negligence-based § 1681i claim for emotional damages, contending that a reasonable trier of fact could not find that their credit reports caused such damages.[20]  The parties' arguments pertain to the fourth and fifth elements of a negligence-based claim under § 1681i: that Jett suffered injury as a result of either defendant's failure to conduct a reasonable reinvestigation, and that either defendant caused such damages.[21]

## A

As with other kinds of actual damages, "[d]amages for emotional harm are

---

[20]The Fifth Circuit has not decided whether a plaintiff can seek relief for emotional damages under FCRA without showing that a CRA caused a lender to deny the plaintiff's credit application.  *See Cousin v. Trans Union Corp.*, 246 F.3d 359, 369-71 (5th Cir. 2001) (considering claim of emotional damages even when plaintiff could not show that CRA caused creditor to deny credit application).  For purposes of this memorandum opinion and order, the court assumes *arguendo* that Jett can obtain a remedy for emotional damages even if she cannot show that the defendants caused the lenders to deny her loan applications.

[21]The court has considered Jett's claims based on alleged harm to her credit score and the alleged denial of her loan applications in §§ VI(A)-(D) and V(A)-(D).

recoverable only when . . . claimants submit proof of actual injury." *Miller v. City of Dallas*, 2002 WL 230834, at *15 (N.D. Tex. Feb. 14, 2002) (Fitzwater, J.) (internal quotation marks omitted) (quoting *Patterson v. P.H.P. Healthcare Corp.*, 90 F.3d 927, 938 (5th Cir. 1996)). "[C]onclusory statements that the plaintiff suffered emotional distress" are insufficient. *Id.* at *16 (quoting *Brady v. Fort Bend Cnty.*, 145 F.3d 691, 718 (5th Cir. 1998)).  Evidence of emotional damages must rise to an appropriate "degree of specificity which may include corroborating testimony or medical or psychological evidence in support of the damage award." *Cousin v. Trans Union Corp.*, 246 F.3d 359, 371 (5th Cir. 2001) (quoting *Patterson*, 90 F.3d at 940).

Claimants must also show that "a sufficient causal connection exists between the statutory violation and the alleged injury."  *Miller*, 2002 WL 230834, at *15 (internal quotation marks omitted) (quoting *Patterson*, 90 F.3d at 938); *see also Wagner v. BellSouth Telecomms., Inc.*, 520 Fed. Appx. 295, 298 (5th Cir. 2013) (citing *Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 664 (7th Cir. 2001), for proposition that plaintiff must show "causal relation between the violation of [FCRA] and the loss of credit, *or some other harm*") (emphasis added); *Patterson*, 90 F.3d at 938 & n.11 ("[A]n award [for intangible harms] is warranted only when a sufficient causal connection exists between the statutory violation and the alleged injury.").

## B

Most of Jett's evidence fails to rise to the required level of specificity.  To recover emotional damages, Jett must demonstrate more than "[h]urt feelings, anger and frustration."

- 31 -

*See Patterson*, 90 F.3d at 940.  Hurt feelings and the like "are part of life." *Id.*  Jett must designate some evidence showing that she suffered "some specific discernable injury to [her] emotional state." *Id.*  Many of Jett's averments only enable a reasonable trier of fact to find that she suffered hurt feelings, anger, or frustration.  This is true of her assertions that she felt that she did not matter, that she did not have peace of mind, that she lost her sense of stability and security, and that the CRAs essentially took away her home ownership.  It is likewise true of her assertion that she has suffered general feelings of humiliation, shame, embarrassment, depression, anxiety, worry, fear, anger, and strife.  These allegations are "too vague and conclusory to support mental anguish damages."  *Brady*, 145 F.3d at 719.

Jett also alleges that she suffered discernible injuries, but they are not sufficiently specific.  This is true of Jett's assertions that she was under constant stress, suffered stress as a result of the paperwork, letters, and requests she sent to Trans Union, and suffered stress, humiliation, and mental exhaustion during the process of fighting to correct her credit report.  It is also true of her more specific allegations that she was frustrated in her attempts to prepare for the arrival of her daughter, that the CRAs undermined her ability to take care of her daughter appropriately, and that stress and mental exhaustion kept her awake at night over the last three to four years.[22]  Although these allegations "refer to specific manifestations of emotional harm," they "fail to elaborate with any detail" or to "give the finder of fact [an]

---

[22]A plaintiff's bare allegation that she lost sleep is insufficient to support an emotional damages claim.  *See Wagner*, 520 Fed. Appx. at 298 & n.5 (noting that plaintiff "alleged that she lost sleep").

adequate basis from which to gauge the 'nature and circumstances of the wrong and its effect on the plaintiff.'" *Id.* (quoting *Carey v. Piphus*, 435 U.S. 247, 263-64 (1978)); *see also, e.g., Mayorga Santamaria ex rel. Doe Children 1-3 v. Dall. Indep. Sch. Dist.*, 2006 WL 3350194, at *49 (N.D. Tex. Nov. 16, 2006) (Lindsay, J.) (requiring plaintiff to offer "evidence that corroborates or quantifies the extent of any injuries").[23]

## C

Jett's remaining evidence—her testimony that she sought medical treatment for depression—fails to show a sufficient causal connection between the alleged FCRA violations and her alleged emotional injury.

Jett testified in her deposition that she sought medical treatment for depression and "was put on some medication for a period for depression."  P. 11/15/13 Resp. Trans Union Mot. for Summ. J. App. 5.  Her testimony indicates that she "associate[s]" this treatment with her claims in this lawsuit.  *Id.*  She also named a specific physician whom she had seen because she was "stressed out."  *Id.* at 9.  Jett testified that the physician "prescribed [her] some antidepressant medications and anxiety."  *Id.*

Jett's testimony provides some evidence that she suffered a discernible injury.  The fact that she saw a physician on one or more occasions, and that at least one prescribed her medication to treat depression and anxiety, corroborates her allegation that she suffered from emotional damages.  But Jett's conclusory opinion that Experian or Trans Union caused her

---

[23]Jett cites *Comeaux v. Experian Information Solutions*, 2004 WL 1354412 (E.D. Tex. June 8, 2004), in support.  Even if *Comeaux* were binding, it is distinguishable on its facts.

depression and anxiety is insufficient to survive summary judgment. *Cf., e.g., Prejean v. Cypress-Fairbanks Indep. Sch. Dist.*, 97 Fed. Appx. 480, 483 (5th Cir. 2004) (stating that although plaintiff "contend[ed] his depression caused his poor performance, . . . he presented no evidence to support that assertion other than his own conclusory opinion"); *Fowler v. Carrollton Pub. Library*, 799 F.2d 976, 982 (5th Cir. 1986) ("The fact of hospitalization in establishing pain and suffering is equivocal, at best, because no expert witness appeared to support [the plaintiff]'s subjective belief that her [mental injury] was caused by stress at work.").

Jett has failed to adduce evidence that would enable a reasonable trier of fact to find that Experian or Trans Union caused her alleged emotional damages. Accordingly, the court grants Trans Union's and Experian's motions for summary judgment to the extent of dismissing Jett's claims against them for emotional damages.

VII

Trans Union moves for summary judgment dismissing Jett's claim for actual damages in the form of out-of-pocket postage costs. Trans Union's argument pertains to the fourth element of a negligence-based § 1681i claim: that Jett suffered an injury compensable under FCRA.

A

Jett maintains that she incurred out-of-pocket postage costs as a result of her efforts to correct her credit report, and she argues that these costs are compensable as actual damages under FCRA. Trans Union argues that Jett has failed to plead these damages, that

she has not identified them as a basis for her claim in her interrogatory responses, and that out-of-pocket postage costs are, as a matter of law, not compensable as actual damages under FCRA.

The court disagrees with Trans Union's contention that Jett has failed to plead her out-of-pocket postage costs. In her amended complaint, Jett requests "actual damages." Am. Compl. ¶¶ 73 & 78. This is sufficient to include a claim for her out-of-pocket postage costs. *See Isengard v. N.M. Pub. Educ. Dep't*, 2009 WL 5220371, at *8 (D.N.M. Dec. 9, 2009) (holding that party did not need to parse out damages figure between compensatory and consequential damages to satisfy Fed. R. Civ. P. 8 pleading requirements).

B

Trans Union contends that Jett failed to identify her out-of-pocket damages claim in her answer to one of Trans Union's interrogatories.

1

The interrogatory in question asked Jett to disclose each "item or category of damage" she claimed to have suffered. Trans Union 10/18/13 Mot. Summ. J. App. 307. Jett answered that she "demand[ed] an award of monetary damages based on her inability to refinance her mortgage with [AHMSI] ('the Mortgage') at a lower interest rate, which was proximately caused by the inaccurate credit reporting of the Mortgage." *Id*. at 308. Trans Union's objection is properly treated as a motion to exclude evidence under Rule 37(c).[24]

---

[24]Trans Union does not contend that Jett failed to comply with the initial disclosure requirement of Rule 26(a)(1)(A)(iii). It maintains that she did not identify these damages in

2

As relevant to Trans Union's motion, Rule 26(e) requires a party who answers an interrogatory to supplement her answer if she learns that it is incomplete or materially incorrect.  If the party fails to supplement her answer as Rule 26(e) requires, Rule 37(c)(1) provides, *inter alia*, that "the party is not allowed to use that information . . . to supply evidence on a motion . . . unless the failure was substantially justified or is harmless."  Rule 37(c)(1); *see EEOC v. Serv. Temps, Inc.*, 2010 WL 1644909, at *8 (N.D. Tex. Apr. 22, 2010) (Fitzwater, C.J.) (citing *CQ, Inc. v. TXU Mining Co.*, 565 F.3d 268, 279-80 (5th Cir. 2009)), *aff'd*, 679 F.3d 323 (5th Cir. 2012).[25]  In making this determination, the court applies a four-part test, evaluating: "(1) [the] proponent's explanation for its failure to disclose the evidence sooner, (2) the importance of the evidence, (3) the potential prejudice to [the] opposing party in allowing the evidence, and (4) the availability of a continuance."  *Id.* (summarizing rule of *CQ*, 565 F.3d at 279-80).

3

The court will assume *arguendo* that Jett failed to comply with Rule 26(e) and will decide under the four-part test whether her failure was substantially justified or harmless.

---

her interrogatory answers, and it cites her interrogatory answer that allegedly fails to identify her out-of-pocket postage costs.  Accordingly, the court's reasoning is not based on, or necessarily relevant to, the considerations that govern a party's failure to make a disclosure required under Rule 26(a)(1)(A)(iii).

[25]Because the court holds that Jett's alleged failure to comply with Rule 26(e) was harmless, the court assumes *arguendo* that Jett's out-of-pocket damages theory qualifies as "information" that can be excluded under Rule 37(c)(1).

First, because Jett has not responded to Trans Union's objection, the first factor weighs in favor of Trans Union.

Second, the evidence is important to Jett because it is the only evidence that she designates to support her out-of-pocket damages theory. If the court excludes the evidence, it will effectively result in the dismissal of her claim for such damages. The second factor weighs in favor of Jett.

Third, Trans Union has not argued that it needs additional time to conduct discovery regarding Jett's out-of-pocket damages theory. Trans Union's objection is based purely on an issue of law. The third factor weighs in favor of Jett.

Fourth, if Trans Union needs time to conduct additional discovery, the court can grant a continuance. The fourth factor weighs in favor of Jett.

Weighing these factors, the court holds in its discretion that Jett's failure to expressly disclose her out-of-pocket damages theory is harmless. *See Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999) (reaching same result on similar facts). In *Brennan's Inc. v. Dickie Brennan & Co.*, 376 F.3d 356, 375 (5th Cir. 2004), the Fifth Circuit cited *Woodworker's* with approval and summarized it as "upholding the district court's decision not to prevent the plaintiff from presenting evidence on a previously undisclosed theory of damages where, *inter alia*, the defendant knew the numbers on which the calculations were based"). Accordingly, the court declines to exclude Jett's evidence of out-of-pocket damages based on her interrogatory answer.

C

Concluding that Jett's claim for out-of-pocket postage costs is not procedurally barred, the court now considers whether out-of-pocket postage expenses are compensable as actual damages under § 1681o.

1

The court turns first to the authorities on which Jett and Trans Union rely.

Jett cites *Rasor v. Retail Credit Co.*, 554 P.2d 1041 (Wash. 1976) (en banc), but *Rasor* merely holds that actual damages under FCRA are not limited to out-of-pocket or special damages but can include general damages. *See id.* at 1050. The *Rasor* court did refer to the plaintiff's "time and expense . . . expended in resolving the dispute," but the meaning of this reference is unclear. *Id.* The court listed the plaintiff's evidence of out-of-pocket costs alongside other evidence that obviously qualifies as "actual damages" under FCRA, but it did not address the independent sufficiency of the plaintiff's evidence of out-of-pocket costs. *See id.* (stating that plaintiff had provided evidence that inaccurate information caused increase in her insurance premiums and general damages). Thus *Rasor* does not support Jett's argument that evidence of out-of-pocket postage expenses is sufficient, without more, to show actual damages.[26]

---

[26]The same is true of *Stevenson v. TRW, Inc.*, 987 F.2d 288 (5th Cir. 1993). *Stevenson* supports the premise that evidence of out-of-pocket costs like Jett's, together with other competent evidence, might provide proof that she suffered actual damages. It does not support the theory that evidence of out-of-pocket costs is sufficient of itself to support a claim for actual damages.

Jett also cites *Millstone v. O'Hanlon Reports, Inc.*, 528 F.2d 829, 834 (8th Cir. 1976), for the same proposition.  At most, *Millstone* supports the proposition that "actual damages" under FCRA might include recovery for decreased productivity at work.  *See id.* at 834 ("The fact that the Post-Dispatch did not diminish Millstone's pay for the considerable time spent fighting O'Hanlon's grossly inaccurate reports should not inure to O'Hanlon's benefit.  Any windfall from his employer's generosity and O'Hanlon's payment of damages properly should go to Millstone.").  But because Jett does not rely on such a theory of damages, *Millstone* does not support her damages theory.

Jett also relies on *Kronstedt v. Equifax*, 2001 WL 34124783, at *13 (W.D. Wis. Dec. 14, 2001).  Without citing any authority, *Kronstedt* holds that "damages claimed for time off work" that "result[] specifically from the reappearance of . . . derogatory [credit] information" are compensable.  *Id.*  Assuming *arguendo* that *Kronstedt* is correct, Jett has not established that out-of-pocket postage expenses should be treated like damages incurred from missing work.  Jett admits that the cost of two postage stamps is "not exorbitant."  P. 11/15/13 Resp. Br. Trans Union Mot. for Summ. J. 16; *see also* P. 11/15/13 Resp. Trans Union Mot. for Summ. J. App. 11 (photocopy of envelope with two postage stamps attached).  She has failed to demonstrate that her claim for a *de minimis* postage expense should be treated akin to a claim for lost wages.

Trans Union cites *Casella v. Equifax Credit Information Services*, 56 F.3d 469, 474 (2d Cir. 1995), to support its argument that out-of-pocket postage expenses are not compensable as actual damages.  *Casella* is inapposite because it addresses whether out-of-

pocket expenses for attorney's fees, not postage fees incurred by the consumer, are compensable.  *See id.*

Trans Union also cites *Reed v. Experian Information Solutions, Inc.*, 321 F.Supp.2d 1109, 1115 (D. Minn. 2004), but *Reed* is inapposite because it addresses whether CRAs can be liable for damages incurred before the consumer notifies the CRA of her dispute.  Jett incurred her out-of-pocket expenses after she had already sent a dispute letter to Trans Union.

Trans Union cites *Jordan v. Equifax Information Services, LLC*, 410 F.Supp.2d 1349, 1356 n.8 (N.D. Ga. 2006), and *Campbell v. Experian Information Solutions, Inc.*, 2009 WL 3834125, at *7 (W.D. Mo. Nov. 13, 2009).  *Jordan* and *Campell* both essentially reason that, by undertaking to dispute the results of the CRA's reinvestigation, the consumer is doing what she is "required by law to do."  *Campbell*, 2009 WL 3834125, at *7 ("Plaintiff has not explained how these reports to Experian were anything other than what the Plaintiff was required by law to do."); *see also Jordan*, 410 F.Supp.2d at 1356 n.8.  The court declines to hold, however, that a plaintiff is precluded under FCRA from recovering expenses incurred in complying with her rights or obligations under the statute.

The court therefore declines to base its decision on the authorities on which Jett and Trans Union rely.

2

The court begins by determining whether FCRA has "a plain and unambiguous meaning with regard to the particular dispute in the case."  *Love Terminal Partners, L.P. v.*

*City of Dallas, Tex.*, 527 F.Supp.2d 538, 558 (N.D. Tex. 2007) (Fitzwater, J.) (quoting

*Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)).  The court holds that the pertinent

language of FCRA is not plain or unambiguous.  "[T]he term 'actual damages' has [a]

chameleon-like quality"; therefore, this court "cannot rely on any all-purpose definition but

must consider the particular context in which the term appears."  *FAA v. Cooper*, ___ U.S.

___, 132 S.Ct. 1441, 1450 (2012).[27]

The court next considers the specific context in which the term "actual damages" is

used.  *See Love Terminal Partners*, 527 F.Supp.2d at 558.  "Congress enacted FCRA . . .  to

ensure fair and accurate credit reporting, promote efficiency in the banking system, and

protect consumer privacy."  *Safeco*, 551 U.S. at 52.  Because FCRA "serves interests similar

to those protected by defamation and privacy torts, there is good reason to infer that Congress

relied upon those torts in drafting" it.  *Cooper*, 132 S.Ct. at 1450; *see also Hyde v. Hibernia*

*Nat'l Bank in Jefferson Parish*, 861 F.2d 446, 448-49 (5th Cir. 1988) (interpreting FCRA

"against the background of principles applicable to the limitation of actions for tort liability"

---

[27]In *Cooper* the Supreme Court interpreted the meaning of the term "actual damages"
in the Privacy Act of 1974, 5 U.S.C. § 552a(g)(4)(A) ("Privacy Act").  *Cooper*, 132 S.Ct. at
1450.  The Privacy Act was passed just a few years after FCRA, and FCRA, like the Privacy
Act, is intended to protect the "right to privacy."  15 U.S.C. § 1681a(4) ("There is a need
to insure that consumer reporting agencies exercise their grave responsibilities with fairness,
impartiality, and a respect for the consumer's right to privacy.").  Although the Court's
interpretation of the later-enacted Privacy Act does not control this court's interpretation of
FCRA, the Supreme Court's interpretation of the Privacy Act is instructive.  Moreover,
because this court has not located any support for the premise that the common law meaning
of "actual damages" changed significantly between 1970 and 1974, the Supreme Court's
interpretation of that term is persuasive.

and primarily citing defamation cases).  Thus the court examines the meaning of "actual damages" against the background of the common law of defamation and invasion of privacy.

"Actual damages" is generally used to mean "compensatory damages."  *See Cooper*, 132 S.Ct. at 1457 (Sotomayor, J., dissenting) (quoting Black's Law Dictionary, which states that actual damages means compensatory damages).  "In actions for defamation and related dignitary torts, two categories of compensatory damages are recoverable: general damages and special damages."  *Id.* at 1453 (majority opinion).  "General damages" compensate the victim "for the harm that the publication has caused to his reputation."  Restatement (Second) of Torts at § 621 cmt. a (1977); *see also id.* at § 652H (stating that one who establishes that another has invaded her privacy may obtain general damages and mental distress damages).  "Special damages" compensate the victim for "the loss of something having economic or pecuniary value."  *Id.* at § 575 cmt. b; *see also id.* at § 652H (stating that one who establishes that another has invaded her privacy may obtain special damages as defined by the law of defamation).

In *Cooper* the Supreme Court interpreted actual damages under the Privacy Act of 1974 ("Privacy Act"), codified in part at 5 U.S.C. § 552a, to include only special damages. The Court did not address whether actual damages under FCRA include general damages. *See Cooper*, 132 S.Ct. at 1454-56.  The Fifth Circuit, however, has repeatedly interpreted actual damages under FCRA as including general damages.  *See, e.g., Fischl v. Gen. Motors Acceptance Corp.*, 708 F.2d 143, 151 (5th Cir. 1983) (holding that FCRA made defendants liable "for humiliation and mental distress . . . as well as for injury to one's reputation and

- 42 -

creditworthiness."). Accordingly, the court holds that actual damages under FCRA include both categories of compensatory damages: general and special.[28]

3

The court now considers whether Jett's out-of-pocket postage expenses are compensable as general or special damages. These expenses are not compensable as general damages because they are not based on emotional distress, or mental pain and suffering, and they are not intended to compensate Jett for harm to her reputation. *See, e.g., Jordan v. City of Baton Rouge*, 192 F.3d 125, at *1 (5th Cir. 1999) (unpublished table decision) ("[Plaintiff] seeks general damages (emotional distress, mental pain and suffering)[.]"). Nor are her out-of-pocket damages compensable as special damages. In the context of the law of defamation, "[s]pecial harm must result from the conduct of a person other than the defamer or the one defamed and must be legally caused by the defamation." Restatement (Second) of Torts § 575 cmt. b (1977). Without this rule, plaintiffs could "create a cause of action" by incurring even nominal expenses, thus vitiating the requirement that the plaintiff prove the defendant caused her harm. *See Electric Furnace Corp. v. Deering Milliken Research Corp.*, 383 F.2d 352, 356 (6th Cir. 1967) (holding that expenses incurred by plaintiff to remedy alleged defamation were not compensable); *see also Karrigan v. Valentine*, 339 P.2d 52, 55-56 (Kan. 1959) (holding that libel action could not be "created out of thin air" by making a $.60 phone

---

[28]Actual damages under FCRA do not, however, include nominal damages. *See Hyde*, 861 F.2d at 448; *see also Matise*, 1998 WL 872511, at *6 (holding that "nominal damages are not recoverable absent actual damages").

call, spending $15 to travel, and hiring an attorney for $500); *Bigelow v. Brumley*, 37 N.E.2d

584, 594 (Ohio 1941) (holding that plaintiff could not "pull himself up by his own boot

straps" and "create a cause of action for himself where one did not otherwise exist" by

spending "upward of $1,000 for legal counsel[,] radio time, stenographic assistance,

telegrams, etc. to refute and deny the alleged defamatory statement").[29]  The court need not

decide whether a FCRA plaintiff can recover out-of-pocket postage expenses once she has

shown that she has suffered other actual damages.  The court need only conclude that where

a FCRA plaintiff fails to show any general or special damages resulting from the actions of

a third-party, she cannot recover actual damages for expenses that she voluntarily incurred

to remedy an alleged FCRA violation.  The court concludes that Jett's claim for out-of-

pocket postage expenses fails as a matter of law because these damages do not qualify as

general or special compensatory damages.  Accordingly, the court grants Trans Union's

motion for summary judgment as to Jett's remaining negligence-based claim under § 1681i.

### D

The court raises *sua sponte* that Experian is also entitled to summary judgment on this

basis.  Although this issue has not been adequately raised by Experian's summary judgment

---

[29]The court is aware of at least three cases in which a court awarded a plaintiff damages for out-of-pocket expenses incurred to avert defamatory harm.  In each, the court found that the defendant had defamed the plaintiff, and that the defendant was liable for the plaintiff's out-of-pocket expenses *as well as* for the other harm caused by the defendant's defamation.  *See Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990); *Bolduc v. Bailey*, 586 F. Supp. 896, 901-02 (D. Colo. 1984); *Wachs v. Winter*, 569 F. Supp. 1438, 1448 (E.D.N.Y. 1983).  These decisions do not support a holding that out-of-pocket expenses are compensable as actual damages absent proof of some other kind of harm.

motion,[30] the court can raise a new ground for summary judgment *sua sponte*, provided it affords Jett notice and a fair opportunity to respond. *See, e.g., Jackson v. Fed. Express Corp.*, 2006 WL 680471, at *9 (N.D. Tex. Mar. 14, 2006) (Fitzwater, J.) (citing *Arkwright-Boston Mfrs. Mut. Ins. Co. v. Aries Marine Corp.*, 932 F.2d 442, 445 (5th Cir. 1991)).   If Jett desires to oppose summary judgment on this basis, she must file a supplemental brief, and an appendix that contains any supporting evidence, within 21 days of the date this memorandum opinion and order is filed.  If she does not, the court will grant summary judgment in favor of Experian as to Jett's remaining negligence-based claim under § 1681i.

## VIII

### A

The court now turns to AHMSI's alternative motion for summary judgment.  Jett alleges that AHMSI violated § 1681s-2(b) of FCRA[31] by failing to properly respond to Trans

_____

[30]Although Experian pointed in its motion to the absence of evidence of actual damages, it did not sufficiently address this issue to put Jett on notice that she was obligated to respond to it.  The court therefore raises this ground *sua sponte* and permits Jett to respond to it.

[31]Section 1681s-2(b) provides:

> (b) Duties of furnishers of information upon notice of dispute
> (1) In general
> After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall- -
> (A) conduct an investigation with respect to the disputed

Union's and Experian's ACDV verification requests. To establish a negligence-based claim under this provision and § 1681o, Jett must prove that (1) she directly disputed the completeness or accuracy of an item of information contained in her consumer file to a CRA; (2) the CRA provided notice of the dispute to the data furnisher before the expiration of the five-business-day period described in § 1681i(a)(2)(A); (3) after receiving notice from a CRA, the data furnisher failed to comply with the duties described at § 1681s-2(b)(1) and (2); (4) the data furnisher's failure to comply with these sections was negligent; (5) Jett suffered injury; and (6) Jett's injury was caused by the data furnisher's failure to comply with § 1681s-2(b)(1) & (2). *Compare* 15 U.S.C. § 1681o *with* § 1681s-2(b).

_____

information;
(B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
(C) report the results of the investigation to the consumer reporting agency;
(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly- -
    (i) modify that item of information;
    (ii) delete that item of information; or
    (iii) permanently block the reporting of that item of information.

B

In its motion for summary judgment, AHMSI points to the absence of evidence that it caused Jett's damages.  Jett's own evidence establishes that Trans Union deleted the AHMSI Account from Jett's credit report even before AHMSI responded to Trans Union's ACDV request.  Accordingly, a reasonable trier of fact could not find that AHMSI's action or inaction in response to Trans Union's request caused any damages resulting from Trans Union's credit reports.

C

Jett argues that if AHMSI had responded to the ACDV requests with full and complete information, and by deleting or modifying the inaccurate or misleading information, her credit information would likely have been reported correctly.  Because the court has already held that Jett has not adduced any evidence that Experian caused her damages in 2012, Jett's argument is only relevant to whether AHMSI's alleged violation of § 1681s-2(b) caused Southwest to deny Jett's 2011 loan application.

This possible claim fails, however, because Jett has not pointed to any evidence that the alleged inaccuracy was caused by AHMSI's failure to use reasonable procedures in responding to Experian's ACDV request.[32]  Jett has failed to adduce any evidence concerning

---

[32]Jett's evidence that AHMSI knew about these policies and procedures is insufficient to show that AHMSI had a duty to conform to them.

AHMSI's policies and procedures in responding to such requests.[33]   Thus she has not taken the first step to show that AHMSI violated FCRA because of the way it reported the AHMSI Account to Experian.   This means that Jett has also failed to show that AHMSI was obligated to conform to Experian's reporting policies and procedures.

D

In AHMSI's alternative motion for summary judgment, it asserts, in pertinent part, that "Plaintiff simply cannot prove that . . . her alleged mental and emotional pain and anguish from the credit denials are attributable to the conduct of [AHMSI] in this case." AHMSI 10/18/2013 Br. Mot. J. on Pleadings or Summ. J. Mot. 9.   It has therefore pointed to the absence of evidence to support Jett's claim for emotional damages.   For the reasons explained above, the court holds that Jett has failed to adduce evidence that she suffered emotional damages, or that Trans Union or Experian caused her alleged emotional damages. *See supra* § VII(B)-(C).   Because Jett's claim that AHMSI caused her alleged emotional damages is logically dependent on a finding that Experian or Trans Union caused such damages, the court holds that AHMSI is entitled to summary judgment dismissing this claim.

E

To establish a willfulness-based claim under § 1681s-2(b) and § 1681n, Jett must

---

[33]The relevant regulation establishes that data furnishers should "[use] standard data reporting formats and standard procedures for compiling and furnishing data, where feasible, such as the electronic transmission of information about consumers to consumer reporting agencies," but it also explains that a data furnisher's policies must be gauged according to "the nature, size, complexity, and scope of the furnisher's activities." 12 C.F.R. § 1022, App. E, part III(b), (a) (2011).

demonstrate that AHMSI recklessly violated § 1681s-2(b).  AHMSI points to the absence of evidence that it willfully violated § 1681s-2(b).  The summary judgment burden has therefore shifted to Jett to produce evidence that would enable a reasonable trier of fact to find that AHMSI violated that section of FCRA.  Jett has failed to address this issue in her response to AHMSI's motion, and she has therefore failed to adduce any evidence to show there is a genuine issue for trial.

The court therefore grants summary judgment dismissing Jett's § 1681s-2(b) claim against AHMSI, and it enters a Rule 54(b) final judgment in AHMSI's favor today.

\* \* \*

The court grants in part and denies in part as moot Trans Union's motion to strike Minor's expert report; grants in part and denies in part Trans Union's motion for summary judgment; grants in part and denies in part Experian's motion for summary judgment; grants AHMSI's alternative motion for summary judgment; denies Jett's motion for partial summary judgment; and raises *sua sponte* that Experian is entitled to summary judgment dismissing Jett's claim for emotional damages.  The court enters a Rule 54(b) final judgment in favor of AHMSI by judgment filed today.

**SO ORDERED**.

June 10, 2014.

SIDNEY A. FITZWATER
CHIEF JUDGE

- 49 -